UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA MONTGOMERY, on behalf of herself and others similarly situated, ) ) ) ) Plaintiff, ) ) vs. ) ) EVEREST RECEIVABLE SERVICES, INC., and DNF ) ASSOCIATES, LLC, ) ) Defendants. ) | 21 C 3535<br><br>Judge Gary Feinerman |

### MEMORANDUM OPINION AND ORDER

Patricia Montgomery brought this putative class action in state court against Everest Receivable Services, Inc., and DNF Associates, LLC, alleging that collection emails they sent her violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and Illinois law. Doc. 1-1. Defendants removed the suit to federal court, Doc. 1, and Montgomery moves to remand it back to state court. Doc. 10. Montgomery's motion is granted, but her request for an award of attorney fees and costs is denied.

### Background

Montgomery allegedly failed to pay a debt that she had incurred on a Celtic Bank credit card account. Doc. 1-1 at ¶¶ 20, 22-23. DNF purchased the alleged debt and hired Everest to attempt to collect it from Montgomery. *Id*. at ¶¶ 24-25.

Everest sent Montgomery a collection email identifying DNF Associates LLC as the current creditor, "Indigo MasterCard / Celtic Bank" as the original creditor, and an outstanding balance of $603.43. *Id*. at ¶¶ 26, 29-30 & pp. 19-21. Less than a week later, Everest sent Montgomery another collection email, which again identified DNF Associates LLC as the

current creditor and listed an outstanding balance of $603.43, but which identified "Indigo MasterCard" as the original creditor. *Id*. at ¶¶ 34-35 & pp. 23-24.

## Discussion

"The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). In an uncommon twist on a common theme, Montgomery argues that she *lacks* Article III standing to pursue her claims in federal court, and therefore that the court lacks jurisdiction over this removed suit, because she does not allege that she took "specific action to her detriment that cost her money or otherwise caused her specific out-of-pocket damages due to" Defendants' "false and confusing statements." Doc. 10 at 3, 5-7; Doc. 20 at 3-5. In addition, invoking 28 U.S.C. § 1447(c), Montgomery seeks to recover the costs and attorney fees she incurred due to the assertedly improper removal. Doc. 10 at 7-8; Doc. 20 at 6-7. Advancing a position usually taken by FDCPA plaintiffs, Defendants respond that Montgomery *has* Article III standing given that (a) she alleges that Everest's emails created the "impression that there could be multiple accounts allegedly due and owing," which gave rise to an "appreciable risk of harm" that she would overpay her debt, and (b) she seeks actual damages. Doc. 18 at 7-12.

**I.      Article III Standing**

The "irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1547 (2016) (citation and internal quotation marks omitted). "To establish injury in fact, a plaintiff must show that he or she

suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548 (internal quotation marks omitted).

Whatever injury Montgomery suffered was caused by Everest's sending the collection emails, and a favorable judicial decision could redress that injury through an award of statutory damages under the FDCPA. *See* 15 U.S.C. § 1692k(a)(2)(A). And because the emails were sent specifically to Montgomery, her injury was "particularized," as they "affect[ed] [her] in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks omitted). So, the only open question here is whether Montgomery's alleged injury is also concrete.

To be concrete, a plaintiff's injury "must be *de facto*; that is, it must actually exist." *Ibid*. In other words, the injury must be "real," as opposed to "abstract." *Ibid*. Both "tangible" and "intangible" injuries, even those that are "difficult to prove or measure," can suffice. *Id*. at 1549. But concreteness requires at least some "appreciable risk of harm" to the plaintiff. *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020); *see also Spokeo*, 136 S. Ct. at 1550 (holding that there is no standing where the complained-of conduct did not "cause harm or present any material risk of harm").

Defendants argue that Montgomery's allegation that Everest's emails "g[a]ve the impression that there could be multiple accounts allegedly due and owing since they refer to different 'Original Creditor' fields," Doc. 1-1 at ¶ 37, alleges an "appreciable risk of harm"—sufficient to confer Article III standing—that she would overpay her debt. Doc. 18 at 7-10. That argument is foreclosed by *Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020).

The plaintiff in *Nettles* alleged that the defendants violated the FDCPA by sending her a dunning letter that overstated her unpaid balance by $104. *Id*. at 898; *see Nettles v. Blatt, Hasenmiller, Leibsker & Moore LLC*, No. 18 C 7766 (N.D. Ill.), ECF No. 1 at ¶¶ 37-38 (alleging

3

that "[i]n a letter dated June 6, 2018, [one of the defendants] represented to Plaintiff that the[re] existed a 'Current Balance: $643.59,'" but that "[o]n June 6, 2018, Plaintiff owed $539.37 on the debt"). As the plaintiff put it, the defendants "were attempting to collect more money tha[n] what [she] owed." *Nettles*, No. 18 C 7766 (N.D. Ill.), ECF No. 25 at 6. The Seventh Circuit nonetheless held that the plaintiff lacked Article III standing, reasoning that "her complaint does not allege that the statutory violations harmed her in any way or created any appreciable risk of harm to her." *Nettles*, 983 F.3d at 900. That is, because the plaintiff did not allege that she was at risk of overpaying the debt, she failed to allege the requisite appreciable risk of harm. *See ibid.* (noting that the plaintiff did not allege that the letter "affect[ed] her at all").

The same result obtains here. Montgomery's complaint alleges that Everest sent her two emails attempting to collect on the same $603.43 debt, one with the original creditor listed as "Indigo MasterCard / Celtic Bank," Doc. 1-1 at ¶ 30, and the other with the original creditor listed as "Indigo MasterCard," *id*. at ¶ 35. The complaint further alleges that the two emails "g[a]ve the impression that there could be multiple accounts allegedly due and owing since they refer to different 'Original Creditor' fields." *Id*. at ¶ 37. The emails thus suggested, at least implicitly, that Montgomery owed more than her actual debt—$1,206.86 ($603.43 times two), rather than $603.43. But as in *Nettles*, Montgomery's complaint does not allege that the emails gave rise to the risk that she would overpay her debt. It follows that Montgomery, like the plaintiff in *Nettles*, failed to allege an "appreciable risk of harm to her" sufficient to confer Article III standing. *Nettles*, 983 F.3d at 900; *see also Markakos v. Medicredit, Inc.*, 997 F.3d 778, 779-81 (7th Cir. 2021) (citing *Nettles*, among other cases, as "foreclos[ing]" the argument that the plaintiff's receipt of dunning letters that "stated inconsistent debt amounts and that unclearly identified her creditor" conferred Article III standing, given that she did not "allege[]

4

any way in which the alleged misinformation in [the] letters injured her"); *Tavarez v. Transworld Sys., Inc.*, 2021 WL 2911206, at *1, *3 (E.D. Wis. July 12, 2021) (relying on *Nettles* to deny standing to a plaintiff alleging that a dunning letter "incorrectly identified Plaintiff's creditor" and "falsely state[d] the amount of the Debt owed").

In pressing the opposite result, Defendants observe that the Supreme Court has "instruct[ed] courts to look at historical practice and Congress's judgement to determine whether an intangible injury is 'concrete' for standing purposes," Doc. 18 at 8 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204-05 (2021)), and submit that Congress intended to protect consumers from receiving misleading information about a creditor's identity, *id*. at 8-10. Defendants add that there is a "recent undercurrent" of concurring opinions in the Seventh Circuit suggesting that the circuit's standing requirements in FDCPA cases are too restrictive. *Id*. at 5 n.2 (citing *Markakos*, 997 F.3d at 785 (Ripple, J., concurring), 786 (Rovner, J., concurring); *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1251 (7th Cir. 2021) (Hamilton, J., concurring)); *see also Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 339-43 (7th Cir. 2019) (Wood, C.J., dissenting from the denial of en banc consideration). But as a district court in the Seventh Circuit, this court is bound by *Nettles* and *Markakos*, which foreclose Defendants' argument that Montgomery's allegations suffice to establish Article III standing. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("In a hierarchical system, decisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions of this court whether or not they agree.") (internal citations omitted).

Finally, Defendants maintain that the request in Montgomery's complaint for actual damages "is sufficient to confer standing at this stage of the litigation." Doc. 18 at 10-11. That

5

argument is defeated by Seventh Circuit precedent holding that where a complaint "d[oes] not describe any concrete harm that the plaintiffs had suffered" from the defendant's alleged misconduct, "[a] mere reference to 'actual damages' in the complaint's prayer for relief does not establish Article III standing." *Collier v. SP Plus Corp.*, 889 F.3d 894, 895-96 (7th Cir. 2018). Because Montgomery's complaint fails to describe a concrete harm resulting from Defendants' alleged FDCPA violation, her complaint's request for "actual damages" does not establish Article III standing. *See Esparza v. Maryland Marketsource, Inc.*, 2020 WL 869225, at *5 (D. Md. Feb. 21, 2020) ("Defendant's last claimed source of an injury in fact, Plaintiff's requests for 'actual damages,' falls well short of the mark. Allowing a Plaintiff to manufacture a justiciable case simply by requesting damages would eviscerate the case or controversy requirement.").

## II.     Attorney Fees and Costs

The removal statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has held that "the standard for awarding fees [under § 1447(c)] should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Montgomery's suggestion that fees and costs are justified here because Defendants "either removed this case without any understanding of current caselaw, or in a cynical attempt to cause additional costs and delay," Doc. 10 at 8, fails to persuade. As discussed, a plaintiff alleging that an FDCPA violation "presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect" has Article III standing. *Larkin*, 982 F.3d at

6

1066 (quoting *Casillas*, 926 F.3d at 333). *Nettles* draws a rather fine line between alleging that Everest's two emails "g[a]ve the impression that there could be multiple accounts allegedly due and owing," Doc. 1-1 at ¶ 37—which is insufficient to establish standing—and alleging that the emails created an "appreciable risk" that Montgomery would pay the same debt twice—which suffices to establish standing. That Defendants mistakenly failed to appreciate that line does not rise to the level of objective unreasonableness for purposes of § 1447(c). *See Lott v. Pfizer, Inc.*, 492 F.3d 789, 791, 793 (7th Cir. 2007) (holding that "[the defendant's] attempt to remove the case," which was premised on the erroneous argument that the case "'commenced' on the date that it was removed to federal court [rather than] the date on which the plaintiffs filed their complaint," was "objectively reasonable").

## Conclusion

Montgomery's motion to remand is granted, but her request for attorney fees and costs is denied. This case is remanded to the Circuit Court of Cook County, Illinois.

October 14, 2021

_____
United States District Judge